Our last case this morning is number 15-13160, Donna Brown v. Philip Morris USA. Mr. Michael. May it please the court. As Florida's 4th District Court of Appeal certified last month in the Burgess case, there is a split among Florida's intermediate appellate courts with respect to the question of what is the sufficiency of evidence for an Engle progeny plaintiff to prevail on the fraud claims in an Engle progeny trial. That split will eventually be resolved by the Florida Supreme Court. The plaintiff in the Prentiss case has invoked Florida Supreme Court's conflict jurisdiction. Could you keep your voice up? Sure. Pull the mic. There you go. The plaintiff in the Prentiss case has already invoked Florida Supreme Court jurisdiction, and the defendant in the Burgess case will invoke it shortly. So we've got conflict jurisdiction on a question that's going to be decided by the Florida Supreme Court on a matter of Florida law. So there's no, if you're right about what we should do, there's no need for us to certify. Well, so we have said that we think Whitmire is a better case and the court should follow Whitmire. We've also said we think we went under. We have a case that doesn't go that way. Correct. Interpreting Florida law at the time. Correct. Now, given the divergence of the DCAs and the conflict that's been certified, there's no reason for us to certify. We just have to wait for the Florida, if you're right, all we have to do is wait for the Florida Supreme Court to decide to take those cases and tell us what the answer is. Yes, this court could certainly do that. We've asked for certification because the Florida Supreme Court does have now Prentiss and it has soon will have Burgess. There could be something in the records of those cases. I'm not familiar. Phil Morris is actually not in those cases, but there could be some reason why this issue is not as squarely presented in this case. I think this case does tee it up, but and certified questions will be appropriate. But you could certainly wait on the question. The problem with not doing either of those, honestly, we have said that we went under either standard. But what would happen if this court went with Whitmire saying it intervened, we'll go with Whitmire and Ms. Brown loses. And then the Florida Supreme Court doesn't decide until after this case is gone. That doesn't seem right. And on the flip side, what would happen if you said that Phil Morris loses, the judgment's paid and gone. And then the Florida Supreme Court comes down and says Whitmire was right. Or frankly, the Florida Supreme Court could say Whitmire's wrong. Cote is wrong. They're all wrong. Here's the right answer. And then we would have never had a chance to learn that right answer and apply it in this case absent waiting or a certified question. Given the testimony at trial that Ms. Brown saw and viewed Marlboro commercials, why do you win under the standard you think is wrong? So if you look at the Cote opinion, Ms. Berger in that case saw the Marlboro Man and it gave her the opinion that smoking wasn't that bad because of the healthy cowboys. So they have block quoted, plaintiffs have block quoted on two places in their brief the Marlboro Man testimony Your Honor just referenced. And I would implore you to go to 1543 of the transcript which is that testimony. It's a page after the block quote. And the plaintiff's lawyer on direct examination asks Ms. Brown, what about Marlboro ads made you feel that Marlboros were the end thing to smoke? So that's the question that's going to tee up is this Mrs. Berger? The answer is I said I don't know. It's the Marlboro Man and the packaging I don't know. You asked about the packaging. That creates, it seems to me, a jury question on what you infer from that testimony. It's not as if she was never asked a question about advertisements or she never testified that she didn't see any advertisements. You'd have a much stronger case if neither of those two things had occurred. If she had never seen an advertisement, never been asked about an advertisement, but here she said she saw them and she linked them together with packaging. Why doesn't that create a jury question under the case law that you think is incorrect? Right, so then you're asking to infer that because she saw the Marlboro Man advertising and smoked Marlboro that she must have gotten a false or misleading impression about Marlboro from the cowboy. Taking into account the case law that you think is wrong, which says that you do that against a big backdrop, which allows a lot of inferences to be drawn with regard to detrimental reliance. I know you think that's incorrect, but those cases seem pretty easy to satisfy to me, given her testimony at trial. I know you've got a different argument with regards to the other standard you think is appropriate. Right, so even under the most permissive inferences, what you have is a link between the false statement that there is exposure for and the belief of the smoker. So you have a link up between— What those cases really hold, I think, is a conclusive presumption. If you look at the advertisements and you become an addict and get sick, you have a claim. I would not go that far. Well, you wouldn't go that far to say that that's what they're holding? Correct, Your Honor. I think you still need the— How less than that do they hold? I think you still need—you view the advertisements that portray a false message. Well, they're looking at advertisements and the package. Right, and the packaging that portrays a false message. They certainly look at the package. Right, and then you need to link up the belief in the misapprehension. You disagree with the Surgeon General and everything else. Right, so you can't just say, I saw Marlboro ads I smoked, therefore I relied. It's got to be, I saw Marlboro ads with the word filter on it. You can have a separate, I believe filters were safer, and those cases allow you to infer that link up between the two. You're trying to import the standard you like into the standard you don't like. And the reason you can't do that is because there's conflict. That's why the DCAs have certified conflict. If you're right about what the permissive standard allows, then there's no conflict under Florida law. And as you correctly say, I think, there is a conflict in Florida law. And that's the permissive standard, like Judge Choflat suggested, is a standard that with very little evidence, given the backdrop that some Florida DCAs have permitted, you get to a jury on reliance. The standard that you think is appropriate certainly says that's not enough, and you have to have a much tighter link between what the claimant saw and what she did and what she believed. But there's distance between those two things, at least it seems to me. There's definitely distance, and maybe I think the distance is just a little bit less, but there certainly is a conflict. There's a second reason that we argue that we win even under COTI, which is COTI had a footnote that we did not properly challenge what I would call reliance causation, which is that even if the smoker had not been defrauded, she would have quit in time to avoid the injury, and therefore reliance was not a legal causation. Here, Mrs. Brown did not attempt to quit smoking, even when told by her doctor, you have PVD from smoking. Was that issue submitted to the jury? Yes, Your Honor. It was subsumed within the reliance question. Your argument has to be that as a matter of law, she did not prove that reliance causation, because the jury found against you on that issue. Correct, Your Honor. And we do have – so that segues into our final issue. We do not challenge the legal correctness of those questions that the jury answered. We're challenging the sufficiency of the evidence. But we do think that the district court's improper commentary on the evidence could have been what got the jury to get those questions wrong. The other side argues, at least in part, that you did not challenge the correctness of those jury instructions below, and that you agreed that they were legally correct. Are they wrong about that? We objected to the jury instructions. We did not challenge their legal correctness in the sense of they're not communicating a legal principle. What objection did you or the counsel at trial articulate to the instructions you're now challenging on appeal? The same thing we're challenging on appeal, though, is an improper comment on the evidence. A trial judge can have a correct statement of the law but nevertheless comment on the evidence, and that doesn't make the statement of law wrong. It just makes it wrong that the jury is being pushed one way by the judge. Take the first one or the second one of the two instructions, if you might, and tell me what part of them you think was the improper comment and which part of them was the correct statement of the law, if you could parse those out. So, Your Honor, it's the first one. There were really two instructions that you're challenging on that ground, right? Right, one for the straight fraud claim and one for conspiracy. Take whichever one you want and tell me, read it to me, and tell me which portion you think was a correct statement of the law and which one is the improper comment. The first one is at transcript 1718. You may find that Ms. Brown relied on the defendant's statement or statements concealing or omitting information, even if you find that she was aware that smoking cigarettes could have been dangerous to her health because such awareness is not knowledge of the true health effects of smoking cigarettes, which the defendants concealed. I think that that statement is not incorrect under the law. The jury was entitled to reach that conclusion, so there was nothing factually or legally incorrect about that statement, but it's the fact that the district court is giving that entire statement, especially the such awareness is not knowledge of the true health effects of smoking, that the judge should not highlight one side's case, and that was plaintiff's closing argument to the jury that are now in the final instructions. But isn't part of that what you call highlighting the plaintiff's case, isn't that sort of a byproduct of the way the Florida courts have litigated and resolved these tobacco cases for decades? Well, that's the O'Hara decision, Your Honor. So, yes, it is in terms of a jury's able to make that inference, but the O'Hara decision from the first DCA says it's wrong to instruct the jury on that inference, even if it's accurate because that's a closing argument. That's a commentary on the evidence. That's for the lawyers, not for the judge to tell the jury. I know you may not practice criminal law, but I'll give you an analog. Aren't juries told all the time in criminal cases that a matter such as knowledge and intent can be inferred from circumstantial evidence? That's the difference, though. Yes, they are. The difference is it's okay to give a general inference instruction, but to bring an additional inference instruction that gives one side's inference highlight, it would be like I know there's a Florida Supreme Court saying you should not instruct the jury that the fact that a defendant flees can be used to infer guilt because we have a reasonable general inference instruction. You shouldn't highlight one inference for the jury to reach, and that's the problem here. Okay. Thank you so much.  Tell me about the argument that we should wait for the Florida Supreme Court at least to figure out whether it's going to accept the purported conflict jurisdiction and move ahead. Because the purported conflict jurisdiction does not accept the outcome of this case, it's going to accept it. Your model says that there are two states in Congress. No national jurisdiction. No jurisdiction. No jurisdiction. And no national jurisdiction. Here, there are two states in Congress. And there's so much in this case that we can't talk about. First of all, the jury found that it did not satisfy the case. It did not provide the case. It did not satisfy the case. It did not satisfy the case. It did not satisfy the case. The testimony was that the industry, given how poor the industry is, active lifestyle is not going to satisfy the case. Then we also testified that it did not satisfy the case. The jury, first of all, had those thoughts and made that connection. It did not satisfy the case. How about the first DCA's more recent opinion in Prentiss? In Prentiss, the jury did not feel that the jury did not satisfy the case. The jury did not feel that the jury did not satisfy the case. In other words, the jury did not feel that the jury did not satisfy the case. Furthermore, it does not satisfy the case. The jury did not feel that the jury did not satisfy the case. The jury did not feel that the jury did not satisfy the case. Have these jury instructions in their particular formulation as used in this case been discussed by any Florida cases before or since? I didn't see any either. Tell me though then if there are no Florida cases directly on point with regard to these particular instructions. The argument is that with regards to specific inferences that could be drawn in your favor, the jury shouldn't have been told about those because that sort of put too much of a thumb on the scale. Thank you. All right, thank you very much. You've got your full time for rebuttal. Got it. Thank you. Here, and again, I've read the Marlborough testimony already, but we have a position by plaintiff that Ms. Brown did not realize the health effects or addictive nature of smoking when she started, and that would be the false belief. The testimony on that was not something like, I thought filters were safer. The testimony on that was, question, is your understanding of the dangers of cigarettes today different than what you understood at that time, that time being when she started? The answer was very different, yes. So we don't know. We know it's different, but we don't have a statement like, I thought they were okay to smoke. I thought they were healthy. I thought they were not addictive. We don't have any of that details, the details that existed in Whitmire, and Whitmire said it's not enough. So I certainly think that we win under Whitmire, and I do admit that our argument is much tougher under Cote. And then turning to your Honor's question about whether these instructions specifically have been addressed in any Florida case, no, they have not. The closest would be the O'Hara instruction, which was, plaintiff need not provide direct evidence of Mr. O'Hara's reliance on any specific statement by Reynolds or its co-conspirators. You may instead infer Mr. O'Hara's reliance on such statements if the evidence as a whole supports such an inference. You may decline to infer such reliance. So that was a two-sided instruction, an inference instruction specific to one inference in the case. Why are permissive inference instructions improper? I understand conclusive inference instructions, but why is a permissive inference instruction inappropriate generally? So it's not inappropriate generally, and the First District said that, the standard instruction, that being the standard instruction that juries can infer things from the evidence, was all that was necessary to give both sides the freedom to argue their perspectives on whether an inference should be drawn from the evidence. So a permissive instruction is fine, as long as it's generalized, telling them, you know, circumstantial evidence, you can give one of those instructions about how to use circumstantial evidence. But you should not drill down to a specific inference in the case that one party is trying to get that specific inference made and specifically tell the jury that, you know, what that party is about to argue in closing arguments, that's an inference that's okay for you to draw. You give the general inference instruction, and then the party can use the enclosing argument to argue for whatever specific inference they want. So but for all these reasons, we think, of course, certified questions, but the court can wait, or if the court is going to reach these issues now, the court should reverse the judgment on appeal. All right. Thank you both very much. It's been helpful. We are in recess for the week.